THE STATE, EX REL. WOOD, *v.* CONSUMERS GAS TRUST COMPANY.

[No. 19,484.   Filed November 1, 1901.]

157  345
158  519
|157  345
e162  692

GAS.— *Refusal of Company to Furnish Gas.* — *Franchises.*—A natural gas company authorized by the legislature to exercise the right of eminent domain, and licensed by a city to lay pipe-lines through its streets and alleys for the distribution of gas to consumers is not relieved from furnishing gas to an applicant in front of whose premises the pipes were laid, because it has an insufficient supply of gas properly to supply its present customers.

From Marion Superior Court; *Vinson Carter,* Judge.

( Mandamus by the State, on relation of Ann E. Wood, against the Consumers Gas Trust Company to compel defendant to permit relatrix to use natural gas from its main. From a judgment for defendant, plaintiff appeals. *Reversed.*

·, *J. W. Kern, J. E. Bell* and *F. W. Ballenger,* for appellant.

*R. N. Lamb, W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller,* for appellee.

HADLEY, J.—Suit for a writ of mandate to compel the appellee, a corporation engaged in supplying natural gas to the inhabitants of the city of Indianapolis for fuel, to lay a service-pipe from its main, and permit the relatrix to connect therewith, and use the gas for fuel in her residence. An alternative writ, embodying all the material averments of the complaint, was issued. Appellee, for a return to the

writ, filed an answer in two affirmative paragraphs. A demurrer to the second was overruled, and to the third sustained. The relatrix elected to stand on her demurrer to the second paragraph, and declining to plead further, judgment was rendered against her for cost. The overruling of said demurrer is the only error assigned.

It is alleged in the alternative writ that the relatrix is a resident of Indianapolis and the owner in fee of a certain lot adjoining and fronting on Bellefontaine street in said city, upon which she has erected a dwelling-house, which she has, at great expense arranged for the use of natural gas, as fuel, by means of a furnace; that no other fuel can be used therein without great detriment and inconvenience, and that a pipe has been properly connected with said furnace and extended therefrom to the exterior of such house and to the property line in front thereof; that the defendant, being a corporation organized under the laws of Indiana, is engaged in the business of operating a natural gas plant and selling to said city and the inhabitants thereof natural gas to be used for fuel; that because of the public character of defendant's business, the city granted to it a valuable franchise and permitted it, among other things, to lay its mains, pipes and conduits, in, through, and beneath the surface of the streets of said city; that said defendant has laid and maintains in said Bellefontaine street, and directly in front of her said dwelling-house one of its mains which it actually uses in transmitting natural gas for use of its patrons; that defendant could by means of a service-pipe easily and conveniently connect its said main with the pipe attached to and connected with the furnace of the relatrix. On September 11, 1899, the relatrix applied to defendant for permission to use its said natural gas in said house, and requested it to lay said service-pipe necessary to connect said main with her said furnace, but the defendant refused to lay said pipe or to permit the relatrix to use said gas, although she advised defendant as to the character of her said

State, *ex rel.*, *v.* Consumers Gas Trust Co.

furnace and the size and dimensions of the burners thereof, and tendered to defendant, the sum of $10 good and lawful money for the use of said gas for a period of six months in advance, that being the customary and usual charge made by the defendant for the use of gas in furnaces of the same character and size; relatrix offered to comply with all the reasonable rules and regulations of the defendant relative to the use of said gas and to the payment therefor. "Wherefore, the relatrix prays that this honorable court issue its alternative writ of mandate, commanding defendant to lay said service-pipe and to permit relatrix to use said gas or show cause why the same shall not be done." The alternative writ commands: "Now therefore you are commanded to lay a service-pipe from your main, on said Bellefontaine street, to the property line in front of said house of relatrix in said city of Indianapolis, and to permit relatrix to use said gas; or in default thereof that you appear before this court   *   *   *   to show cause, if any you have, why the same should not be done." The second paragraph of return admits that the defendant is a corporation organized under the laws of Indiana, and that it is engaged in the business of operating a natural gas plant and selling and distributing gas to the city of Indianapolis and its inhabitants to be used as fuel. Among the objects of the corporation, as set forth in its articles of incorporation, are, to drill and mine for natural gas, to purchase, lease, and acquire gas wells and the products thereof, and to furnish the same to patrons for use; to take, hold, convey and mortgage real estate, and to own, operate and maintain such machinery, works, pipe-lines, etc., as the carrying out of the objects above mentioned may require. The capital stock is fixed at $500,000, and the term of corporate existence fifty years; the articles provide that the entire capital stock shall be placed under the control of a board of trustees, giving such board full and irrevocable power to hold and vote the same; a board of nine directors is to be selected by the trustees; the board of trustees is self-

perpetuating, all vacancies by death and otherwise to be filled by the survivors. It is also provided that upon the payment by any subscriber to the capital stock of the amount of his subscription, the trustees shall issue a certificate showing the amount of stock held in trust for him, and such subscriber shall be entitled to receive all dividends earned by his stock not to exceed eight per cent. per annum, which dividends shall be paid in money or applied to the indebtedness of such subscriber to the corporation, as a consumer of gas; also that when such certificate holder shall have received by dividends or otherwise upon said certificate an amount equal to his subscription, with interest at the rate of eight per cent. per annum thereon, and after payment of all indebtedness of said company, then it shall be the duty of the directors of said company to reduce the price of gas so that the same shall thereafter be supplied to consumers at cost. It is alleged that the defendant was organized as a voluntary enterprise in the general interest of the people of Indianapolis and not for the purpose of making money for any one, but solely for the purpose of furnishing gas to consumers in the city at the lowest possible rate, the same not to exceed, in any event, the schedule of prices fixed by the existing ordinance; that since its organization said company has been operating in pursuance of the laws of the State, furnishing gas for heating to the people of Indianapolis at prices not exceeding certain rates theretofore fixed by an ordinance of the city; that 6,712 citizens of Indianapolis subscribed for 25,675 shares of stock, aggregating $641,875, of which amount $605,258 was paid; that certificates of indebtedness were sold to the amount of $112,000 and that $429,000 of such certificates were used in the purchasing of pipe and other material; that the defendant made every possible effort, by soliciting subscriptions and the sale of certificates of indebtedness, to raise the necessary funds to pay for its plant, and also made an unsuccessful effort to sell $1,500,000, of its bonds, so that its

only capital and resources were derived from stock subscriptions, the sale of its certificates, and from the revenues derived from the sale of gas; that with the money so derived it purchased and laid pipe-lines of various sizes, aggregating 378 miles; that it has drilled and connected with its pipe-lines 404 natural gas wells, of which 105 have been exhausted and abandoned; that it has purchased rights of way, and has leased 78,287 acres of land for the purpose of drilling gas wells thereon; that it has built and equipped a compressing station in Hamilton county at an expense of $62,000 and is engaged in building another in Madison county, which will cost $75,000, a large part of which last amount has been paid; that all its funds, revenues and resources have been thus expended in the necessary expense of carrying on its said business of supplying gas; that its trustees and directors have served without pay, though many of them have rendered arduous services. That at the time the company was organized natural gas had been developed in Marion and Hamilton counties, which was believed to be inexhaustible; that the well pressure was then 325 pounds to the square inch; that the wells in Marion county and eighty of the 100 drilled in Hamilton county have been exhausted and abandoned, and others in that county are of little value; that the average pressure of the wells now in use has declined from 294 pounds to the square inch on January 1, 1899, to 132 pounds to the equare inch on July 1, 1899; that in the best gas territory the highest pressure from a new well does not exceed 200 pounds to the square inch. That the defendant is furnishing natural gas fuel to 13,000 residences and dwelling-houses in said city, and a large number of other houses, but that by reason of the diminution of the quantity of gas and the reduction of pressure, it cut off, several years ago, during the cold weather many of its largest customers, such as factories, thus discriminating in favor of residences; that it has been wholly unable during the past two seasons to supply a suffi-

cient amount of gas to the consumers already on its lines, when the weather is cold, and that during the winter of 1898 and 1899 hundreds of its patrons were left almost entirely without gas, and as a consequence much suffering resulted; that the colder the weather, the greater was the deficiency of gas and the less its ability to supply the same; that there is a serious menace and danger in the condition that results from an insufficient supply of gas, in that the fires in houses insufficiently supplied are liable to go out without notice to the occupants, and "then the gas flowing in again is liable to cause explosions and great danger." "That in view of the facts and conditions above set forth, which it has been and still is impossible for this defendant to remedy, and because it has become a physical impossibility for it to furnish additional consumers with gas, defendant, by its board of directors, on the 3rd day of May, 1899, made an order that in view of the premises it could not make any new contracts to furnish consumers with gas; that like orders covering the cold weather had been made each autumn for five years prior thereto;" that defendant's refusal to furnish gas to relatrix is by reason of the facts recited and the said order, and not because of a disposition to discriminate against her; that other equally meritorious applications have been denied and all applicants have been refused; that if defendant should comply with the demands of relatrix and others for natural gas fuel, it would be unable to give them an adequate supply, but by so much as it would give to them, it would reduce the supply that it would be able to give to its patrons already connected, and thereby render its service inefficient in a greater degree to all of its customers; that after the completion of its new compressing station referred to, it is entirely certain it will not be able to supply adequately any more customers than it already has, nor to supply additional customers at all; that if the house of relatrix were connected with its lines it would be impossible for defendant to furnish her and its other customers the natural

gas necessary for their needs and proper demands, and it would be impossible to furnish her any gas whatever without wrongfully withholding the same from other customers already connected, having older and prior rights thereto, and if she were furnished gas fuel hundreds of others making like applications would have to be furnished, thereby rendering its supply and services to all its customers inadequate and insufficient.

Writs of mandate must specify the particular things required to be done. 13 Ency. Pl. & Pr. 684; High on Ex. Leg. Rem. (3rd ed.) §539; Merrill on Mandamus, §260; 2 Spelling's Ex. Relief, §1653; *People* v. *Brooks,* 57 Ill. 142; *School District* v. *Lauderbaugh,* 80 Mo. 190.

The things requested and commanded of the appellee were to lay a service-pipe from its main in Bellefontaine street to the property line in front of the relatrix's house, and to permit her to use the gas. The mandate is not to furnish the relatrix with an adequate or any definite amount of gas, but the obvious force and limitations of the request, and order, are to require the appellee to furnish her with the necessary means, and permit her to use the gas upon the same terms that other inhabitants of the city are permitted to use it. Is it the legal duty of appellee to do these things? Mandamus is a proper remedy to compel appellee to furnish gas to the relatrix if it is shown that she is entitled to it. *Portland, etc., Co.* v. *State, ex rel.;* 135 Ind. 54, 21 L. R. A. 639.

The appellee is a corporation authorized by the legislature to exercise the right of eminent domain (Acts 1889, p. 22), and licensed by the city of Indianapolis to lay pipes through its streets and alleys for the transportation and distribution of natural gas to its customers. These rights, which involve an element of sovereignty, and which can exist only by grant from the public, are rooted in the principle that their exercise will bestow a benefit upon that part of the public, in whose behalf the grant is made, and the benefit received by the citizens is the adequate consideration for the

right and convenience surrendered by them. The grant thus resting upon a public and reciprocal relation, imposes upon the appellee the legal obligation to serve all members of the public contributing to its asserted right, impartially, and to permit all such to use gas who have made the necessary arrangements to receive it, and apply therefor, and who pay, or offer to pay, the price, and abide the reasonable rules and regulations of the company. *Portland, etc., Co., v. State, ex rel.,* 135 Ind. 54; *Coy v. Indianapolis Gas Co.,* 146 Ind. 655, 36 L. R. A. 535; *Haugen v. Albina, etc., Co.,* 21 Ore. 411, 28 Pac. 244, 14 L. R. A. 424; *People v. Manhattan Gas Co.,* 45 Barb. 136; *Crumley v. Watauga Water Co.,* 99 Tenn. 420, 41 S. W. 1058; *American, etc., Co. v. State,* 46 Neb. 194, 64 N. W. 711, 30 L. R. A. 447; *State, ex rel., v. Butte City Water Co.,* 18 Mont. 199, 44 Pac. 966, 32 L. R. A. 697, 56 Am. St. 574.

But, without controverting the law as declared in the foregoing cases, or claiming exemption from the rule, it is answered as a justification for denying the relatrix the use of gas, that the corporation was organized as a voluntary enterprise in the general interest of the people of Indianapolis; that its purpose was not the making of money for any one, but to furnish gas to consumers in the city at the lowest possible rate, and that the supply of gas the corporation has on hand, or that it may possibly procure, is insufficient to supply what customers it has now connected with its mains, in severely cold weather, and that to permit the relatrix to use gas would be to further reduce the already insufficient supply. Will these facts relieve the appellee of its duty to permit the relatrix to use its gas? If they will, then it must be true that the relatrix is not entitled to share in the gas furnished by appellee to the inhabitants of the city, because her participation will reduce the possible supply below the full requirements of those already being served.

It is proper to observe that the present consumers of ap-

pellee's gas are not here complaining of the quantity of gas received by them, or protesting against the admission of the relatrix to a share of the supply, and it is difficult to see how the appellee, while continuing to assert and exercise its extraordinary rights, may set up its own default or probable default to others as a legal excuse for the non-performance of its duty to the relatrix.

The legal effect of the answer is that the relatrix shall have no gas because her neighbors, in common right, have none to spare. It is admitted, because not denied, that the relatrix is a member of that part of the public which appellee has engaged to serve. As such she has borne her part of the public burdens. She has rendered her share of the consideration. Bellefontaine street in front of her house has been dug up and her property made servient to the use of appellee in laying its pipes, and in carrying forward its business, and her right to use the gas, and to share in the public benefit, thus secured, whatever it may amount to, is equal to the right of any other inhabitant of the city. The right to gas is held in common by all those abutting on the streets in which appellee has laid its pipes, or it is held of right by none. The legislature alone can authorize the doing of the things done by appellee, and this body is prohibited by the fundamental law from granting a sovereign power to be exercised for the benefit of a class, or for the benefit of any part of the public less than the whole residing within its range. Cooley's Con. Lim. (6th ed.), p. 651, and cases cited.

Appellee's contract is with the State, and its extraordinary powers are granted in consideration of its engagement to bring to the community of its operations a public benefit; not a benefit to a few, or to favorites, but a benefit equally belonging to every citizen similarly situated who may wish to avail himself of his privilege, and prepare to receive it. There can be no such thing as priority, or superiority, of

right among those who possess the right in common. That the beneficial agency shall fall short of expectation can make no difference in the right to participate in it on equal terms. So if appellee has found it impossible to procure enough gas fully to supply all, this is no sufficient reason for permitting it to say that it will deliver all it has to one class to the exclusion of another in like situation. It is immaterial that appellee was organized to make money for no one, but to supply gas to the inhabitants of Indianapolis at the lowest possible rate. It has pointed us to no special charter privilege, and under the law of its creation, certain it is, that its unselfish purpose will not relieve it of its important duty to the public. The principle here announced is not new. It is as old as the common law itself. It has arisen in a multitude of cases affecting railroad, navigation, telegraph, telephone, water, gas, and other like companies, and has been many times discussed and decided by the courts, "and no statute has been deemed necessary to aid the courts in holding that when a person or company undertakes to supply a demand which is 'affected with a public interest,' it must supply all alike, who are like situated, and not discriminate in favor of, nor against any." 45 Cent. L. J. p. 278; *Haugen* v. *Albina, etc., Co.,* 21 Ore. 411; *Olmsted* v. *Proprietors, etc.,* 47 N. J. L. 311; *Stern* v. *Wilkesbarre Gas Co.,* 2 Kulp. 499; *Chicago, etc., Co.* v. *People,* 56 Ill. 365, 8 Am. Rep. 690; *Nebraska Tel. Co.* v. *State,* 55 Neb. 627, 634; *Watauga Water Co.* v. *Wolfe,* 99 Tenn. 429, 41 S. W. 1060, 63 Am. St. 841; *State, ex rel.,* v. *Delaware, etc., R. Co.,* 48 N. J. L. 55, 2 Atl. 803, 57 Am. Rep. 543.

In a further material sense the discrimination asserted by the answer becomes injurious to the relatrix. It is a matter of common knowledge that natural gas is a cheap and convenient fuel, and for many reasons is eagerly sought by those who may reasonably obtain it. It is, therefore, of like knowledge, that in a community where it is supplied to some premises, and denied to others, the effect is to enhance

the value of such parcels as have it, by making it more desirable and profitable to occupy them, and to depreciate the value of such parcels as are excluded from its use. It is very clear that appellee may not, under the guise of administering a public benefit, exercise a public power, to take the property of one and confer it upon another.

The principal argument of appellee's counsel is, that not having sufficient gas to supply its present customers, and having exhausted every available means for increasing its supply, it is therefore impossible for it to perform its public duty, and mandamus will not lie to compel an attempt to perform a duty impossible of performance. We concede in the fullest terms that mandamus will not lie to require an attempt to do a thing shown to be impossible. But this is not the question we have before us. The relatrix is not asking, nor the court commanding that the company attempt to increase its supply of gas. The relatrix is only seeking to be permitted to share in the quantity of gas the company has at its command, whatever that may be, on the same terms that others are permitted to use it. There is in the request of the relatrix nothing unreasonable, and nothing impossible of performance. The whole question comes to this. The appellee under public grant for the dispensation of a public good, has taken possession of certain streets and alleys in Indianapolis for the distribution and sale of natural gas to those abutting on its lines. The relatrix owning a lot abutting on one of appellee's lines erected thereon a dwelling-house, and upon the faith of being permitted to use the gas has piped her house, and constructed her heating apparatus of a form, suitable only to the use of natural gas as a fuel, which will be worthless if natural gas is denied her. She has in common with other abutters been subjected to the inconvenience of having the street in front of her house dug up and had her property occupied with the company's pipes. She has made all necessary arrangements to receive the gas, has tendered appellee its usual charges, has offered to abide

by its reasonable rules and regulations, and we perceive neither legal reason, nor natural justice, in denying her the rights accorded to those of her neighbors who have contributed in the same way to appellee's enterprise. The second paragraph of answer was insufficient, and the demurrer thereto should have been sustained.

Judgment reversed, with instructions to sustain the demurrer to the second paragraph of the return to the alternative writ of mandate.