Matthias, J.
 

 A single question of law is presented by this appeal: Has the Public Utilities Commission jurisdiction and authority to adopt and promulgate emergency rules and regulations which in effect suspend for a limited period the operation of certain terms of a contract duly entered into by a municipality and a public utility for gas to be furnished to the inhabitants and residents of the municipality?
 

 In the stipulations of fact, the city concedes that the supplemental emergency order of the Public Utilities Commission, issued in a proceeding entitled “In the Matter of the Investigation of the Supply of Natural Gas Within the State of Ohio,” from which
 
 *351
 
 order this appeal is taken, was issued afte.r notice to the public utilities affected and other interested par-, ties and extensive hearings in which full opportunity was afforded the city and other municipalities in Ohio and to the public utilities, which the order affects, to be present, introduce evidence and participate in the hearings.
 

 The city further concedes that the evidence submitted to the commission clearly established that the supply of gas available, through the pipe lines of the natural gas companies operating in Ohio, with minor exceptions, will probably be insufficient during severe weather of the winter to meet in full the demands of consumers; that shortages affecting all classes of consumers are probable; that the probable shortage is due in large part to increased demands in recent years for natural gas principally for heating purposes, plus the inability of the major pipe line companies to extend their facilities; and that “the supplemental emergency order of October 3, 1947,
 
 is supported by the transcript of testimony in this case and is a reasonable and necessary regulation in the interests of the health, safety and welfare of the people of Ohio.”
 
 (Emphasis supplied.)
 

 These stipulations completely eliminate any controversy as to the reasonableness and necessity of the emergency order in question in the interest of the, health, safety and welfare of the people of Ohio.
 

 Notwithstanding such concession, the city contends that the supplemental emergency order of October 3, 1947, is unlawful, in that:
 

 1. It interferes with the contract in effect between The East Ohio Gras Company and the city, contrary to Section 4, Article XVIII of the Ohio Constitution, which authorizes such a contract.
 

 2. It impairs the obligation of such contract and is
 
 *352
 
 violative of Section 10, Article I of the United States Constitution, and Section 28' of Article II of the Ohio Constitution.
 

 3. It is not authorized by statute so far as the order has any application to alter, amend or interfere with such contract.
 

 Various limitations and restrictions are required by the order of October 3, 1947. The one particularly involved here is that “no distributing utility shall supply or be required to supply natural gas service to any consumer present or prospective in the state of Ohio for equipment designed to furnish the source of space heating that replaces other fuels, or for additional space-heating equipment.”
 

 The conditions which the Public Utilities Commission found necessitated the order in controversy were that “the unprecedented demand for gas and the inability of the utilities and their suppliers to provide facilities to make additional gas available to consumers in the state of Ohio has created an emergency affecting the health, safety and welfare of the people of the state of Ohio which will continue to prevail at least during the coming winter 1947-1948.”
 

 The commission stated in its order that the emergency making necessary its action arises in part from the inability to secure sufficient supplies of gas in the Ohio field and the noncompletion of transmission lines from other fields.
 

 It is stated in the order of the commission that “notwithstanding the restrictions heretofore put into effect by the major utilities with the approval of the commission, and the efforts of such utilities as herein-before set forth^ and that further restrictions on the sale of natural gas for space heating are necessary, and that it is essential that such restrictions be applicable universally 'to all gas distributing utilities de
 
 *353
 
 pendent in whole or in part upon supplies of gas from others, and that such restrictions shall be of uniform operation throughout the state of Ohio.”
 

 For the proper enforcement of the regulations prescribed by it, such order provides that “whenever evidence available to the utility reasonably indicates that any consumer has connected gas-fired space-heating equipment which is not under these rules eligible for service from the utility’s gas service lines, the utility shall forthwith in writing direct such consumer to disconnect such equipment and discontinue the use of such service, and if such consumer shall fail or refuse to do so within ten (10) days, the utility shall discontinue the entire supply of natural gas to such consumer and shall withhold such supply until such gas-fired space-heating equipment has been disconnected. To insure against reconnection of such space-heating equipment the utility, before re-establishing service to such consumer, shall take such measures as may be deemed practicable and necessary to restrict the flow of gas to quantities required for other than space-heating purposes.”
 

 Such order provides further that “failure of any gas distributing utility to abide by and support the provisions of this order shall subject such utility and its responsible officers, agents and employees to the penalties provided by the Public Utilities Commission Act.”
 

 The contract between the city and The East Ohio Gas Company was entered into by virtue of authority conferred by Section 4, Article XVIII of the State Constitution, which provides in part as follows:
 

 “Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its in
 
 *354
 
 habitants, and may contract with others for any such product or service.”
 

 Obviously the primary purpose of that provision is to confer power upon municipalities to construct and operate their own utilities or secure by contract the product or service of other utilities.
 

 The power thus conferred is essentially a proprietary power, and it has been held in numerous cases that so far as a municipality acts in a proprietary capacity it possesses the same rights and powers and is subject to the same restrictions and regulations 'as other like proprietors.
 
 Butler, a Taxpayer,
 
 v.
 
 Karb, Mayor,
 
 96 Ohio St., 472, 117 N. E., 953;
 
 Travelers Ins. Co. of Hartford, Conn.,
 
 v.
 
 Village of Wadsworth,
 
 109 Ohio St., 440, 142 N. E., 900, 33 A. L. R., 711;
 
 State, ex rel. White,
 
 v.
 
 City of Cleveland,
 
 125 Ohio St., 230, 181 N. E., 24, 86 A. L. R., 1172.
 

 Because of the above-recited concessions made by the city, we have to determine only whether such contract is immune from a valid exercise of the police power of the state in the form of the emergency order adopted and promulgated by the Public Utilities Commission, or whether the emergency police power of the state may be exercised to temporarily suspend certain, rights and duties enumerated in such contract.
 

 It is to be observed that we are here dealing with an emergency situation affecting the health, safety and welfare of the people* of Ohio. The order of the Public Utilities Commission is general in its provisions and effective throughout the entire state. May it be nullified in the city by reason of the contract with The, East Ohio Gras Company?
 

 This- question was answered by this court by dismissal of the appeal as of right in the case of
 
 City of Cleveland
 
 v.
 
 East Ohio Gas Co.
 
 (34 Ohio App., 97, 170 N. E., 586) upon finding no debatable constitution
 
 *355
 
 al question was involved.
 
 (East Ohio Gas Co.
 
 v.
 
 City of Cleveland,
 
 121 Ohio St., 628, 172 N. E., 379.) See, also,
 
 Board of County Commissioners of Franklin County
 
 v.
 
 Public Utilities Commission,
 
 107 Ohio St., 442, 140 N. E., 87, 30 A. L. R., 429.
 

 Upon principle and authority, the rule has become firmly established that all contracts are subject to the police power of the state and that when in an emergency the public welfare requires the modification of contractual provisions, the primary question presented is not whether the power sought to be exercised, directly or indirectly, affects the contract, but whether the proposed action is reasonably essential in the interest of the public health, .safety, morals or welfare.
 

 It is stated in the text in 11 American Jurisprudence, 978, Section 251, that “the police power has been described as the law of necessity and as being coextensive with the necessities of the case and the safeguards of public interest. It is the power of self-protection on the part of the community. ’ ’
 

 The authority of the state, with which we are dealing in this case, must be treated as an implied condition of any contract and as such it is as much a part of the contract as though written into it. The principle seems well established that when the parties are those whose rights and powers were created for public purposes and when the subject of the contract is one which affects the safety and welfare of the public, such contracts are held to be within the supervising power and control of the Legislature when exercised to protect the public safety, health and morals, and that clause of the federal Constitution which protects contracts from legislative action cannot in every case be successfully invoked. The presumption is that when such contracts are entered into it is with the knowledge that the parties cannot, by making
 
 *356
 
 agreements on subjects involving the rights ox the public, withdraw such subjects from the police powex; of the Legislature.
 
 Chicago, B. & Q. Rd. Co.
 
 v.
 
 Nebraska,
 
 170 U. S., 57, 72, 42 L. Ed., 948, 18 S. Ct., 513;
 
 East New York Savings Bank
 
 v.
 
 Hahn,
 
 326 U. S., 230, 90 L. Ed., 34, 66 S. Ct., 69;
 
 Steele, Hopkins & Meredith Co.
 
 v.
 
 Miller, 92
 
 Ohio St., 115, 124, 110 N. E., 648, L. R. A. 1916C, 1023; Ann. Cas. 1917C, 926.
 

 The rule applicable is no better stated than in 8 Ohio Jurisprudence, 379, Section 264, as follows:
 

 “Government is based upon the proposition that certain inherent natural rights of the individual must be surrendered for the common good of all. If this principle were not applied, government could not exist. Thus, while generally speaking, among the inalienable rights of a citizen is that of liberty of contract; such liberty is not absolute and universal. It is one of the prime essentials of the principles of public policy that freedom of contract and private dealings may be restricted by law for the good of the community. It is a corollai'y to this proposition that all contracts when made are subject to the paramount rights of the public, and that all contracts the subject matter of which involves the public welfare will have read into them with the.same force and effect as if expressed in clear, and definite terms, all public regulations then existing or thereafter to be enacted which tend to the promotion of the health, order, convenience, and comfort of the people and the prevention and punishment of injuries and offenses to the public.”
 

 “The power ‘which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the * * * general welfare of the people, and is paramount to any rights under contracts between individuals.’ ”
 
 East New York Savings Bank
 
 v.
 
 Hahn, supra,
 
 citing
 
 Mani
 
 
 *357
 

 gault
 
 v.
 
 Springs,
 
 199 U. S., 473, 50 L. Ed., 274, 26 S. Ct., 127;
 
 Marcus Brown Holding Co., Inc.,
 
 v.
 
 Feldman,
 
 256 U. S., 170, 65 L. Ed., 877, 41 S. Ct., 465.
 

 Following the above quotation in the
 
 Hahn case
 
 the court added:
 

 “Once we are in this domain of the reserve power of a state we must respect the ‘wide discretion on the part of the Legislature in determining what is and what is not necessary. ’ * * * So far as the constitutional issue is concerned, ‘the power of the state when otherwise justified,’
 
 Marcus Brown Co.
 
 v.
 
 Feldman,
 
 256 U. S., 170, 198, is not diminished because a private contract may be affected. ’ ’
 

 In the disposition of the instant case, we need to apply only the general principles which govern such situation. These are set forth very clearly in 11 American Jurisprudence, 980 and 1002, Sections 252 and 264. It is there stated, in substance, that the general principle arising from the applicable decisions cited' is that emergency measures may be valid although temporarily impairing the power to enforce contracts; that conditions may arise in which a temporary restraint of enforcement of a contract may be consistent with the spirit and purpose of the constitutional provision forbidding the impairment of the obligation of contract and may thus be found to be within the range of the reserved power of a state to protect the vital interests of the community; and that the constitutional prohibition should not be so construed as to prevent limited and temporary inter-positions with respect to the enforcement of the contracts if made necessary by urgent public needs produced by economic causes.
 

 It is specifically stated that “the police power may be exercised without violating the true intent of the provision forbidding impairment of the obligation of
 
 *358
 
 contracts, in directly preventing by a temporary and conditional restraint the immediate and literal enforcement of a contractual obligation, where vital public interests would otherwise suffer.”
 

 The constitutional prohibition against state laws impairing the obligation of contracts does not affect the power of the state to protect the public health or the public safety, for rights and privileges arising from contracts are subject to regulations for the purpose stated, in the same sense and to the same extent as is property whether owned by natural persons or corporations.
 

 It seems too obvious to require citation of authority or extended comment upon the proposition that, where conditions of gas shortage give rise to a state-wide emergency such as to compel the concession by the objecting party that the order of the commission “is a reasonable and necessary regulation in the interest of health, safety and welfare of the people of Ohio,”'the contention that the city and its inhabitants nevertheless are exempted from the operation and effect of such order is groundless.
 

 The Court of Appeals of New York in the case of
 
 Twentieth Century Associates, Inc.,
 
 v.
 
 Waldman,
 
 294 N. Y., 571, 63 N. E. (2d), 177, held that contracts are subject to the police power of the state, and when emergency arises and public welfare requires modification of private contractual obligations in the public interest, the question is whether the legislation, is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end, rather than whether legislative action affects contracts incidentally, directly or indirectly.
 

 As stated in the case of
 
 Sligh
 
 v.
 
 Kirkwood, Sheriff,
 
 237 U. S., 52, 59 L. Ed., 835, 35 S. Ct., 501, the police power “is not subject to definite limitations, but is
 
 *359
 
 coextensive with the necessities of the case and the safeguards of public interest. * * * It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public
 
 *
 
 * * health.”
 

 Undoubtedly the legislative branch of the state government may confer upon the. Public Utilities Commission the powers here sought to be exercised. See Section 614-3
 
 et seq.,
 
 General Code, and particularly Sections 614-3, 614-8, 614-15, 614-27 and 614-32. The latter section provides in part as follows:
 

 “The commission shall have power, when deemed by' it necessary to prevent injury to the business or interests of the public or any public utility of this state in case of any emergency to be judged by the commission, to temporarily alter, amend, or with the consent of the public utility concerned suspend any existing rates, schedules or order relating to or affecting any public utility or part of any public utility in this state.”
 

 The powers thus conferred upon the Public Utilities Commission are very broad and comprehend authority for the supervision, regulation and, in a large measure, control of the operation of public utilities; and, therefore, in order to protect and safeguard the interests of the public, particularly in respect to health, safety and welfare, the Public Utilities Commission may adopt and promulgate such orders as are essential to accomplish such purpose.
 

 It being conceded that the order of the commission is supported by the testimony adduced at the hearing before it and that such order is a reasonable and necessary regulation in the interests of the health, safety and welfare of the people of Ohio, we hold it to be a valid and enforceable order effective throughout the state, and, therefore, that the city and its inhabit
 
 *360
 
 ants are not immune from its operation and effect.
 

 The order of the Public Utilities Commission is accordingly affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Turner, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.