PEOPLES' GAS AND ELECTRIC COMPANY, appellant, v. C. D. HERME, appellee.

No. 47729.

(Reported in 46 N.W.2d 551)

'MARCH 6, 1951.

REHEARING DENIED JUNE 8, 1951.

Smith & Beck, of Mason City, for appellant.

M. L. Mason, of Mason City, for appellee.

WENNERSTRUM, C. J.—Plaintiff sought in the trial court to enjoin the defendant from continuing connections with the company's gas line in Mason City for heating purposes. The trial court denied the injunction and plaintiff has appealed.

The appellant is a public utility company which serves the city of Mason City, Iowa, with gas. A franchise was granted to the company on May 9, 1938, by the city council, was approved at a special election held on June 6, 1938, and accepted by the company on July 12, 1938. Under this franchise the company, at the time of the trial, furnished natural gas for general use, space heating, and for commercial and industrial purposes. The appellant has a water gas manufacturing plant in Mason City, but it was not operated during the year 1948, and up to the time of the trial in December 1949. It would appear from the record that natural gas was obtained by the appellant for local distribution commencing August 1, 1942.

The appellee operates a garage in Mason City, Iowa, and on March 19, 1948 made application to the company for gas service for his building at 251 Eighteenth Street Southeast. At the time of this application the appellee is claimed to have made the statement that the gas service was wanted for a water heater. Sometime prior to December 16, 1948, the appellee, without the knowledge or consent of the appellant, made a connection to the service pipeline in his building and attached it to facilities for space heating. When this fact was discovered by representatives of the appellant company, the appellee was informed that since December 30, 1946, natural gas for heating purposes had been restricted, that new installations had not been permitted except under limited conditions, that the appellant was not taking on any commercial heating or installations for heating of new homes and

that the space heating which was being made use of by the appellee would have to be discontinued and the connections made for that purpose disconnected. No application had ever been made to the appellant for space heating of the garage. The appellee refused to disconnect the installation for heating purposes, and the litigation, which has resulted in this appeal, was then commenced by the appellant. Upon the trial of the cause the appellant offered voluminous evidence pertaining to the necessity for the restriction of the use of natural gas by it and its patrons and in justification of its inability to furnish natural gas for heating purposes to the appellee. The appellee offered no testimony.

The record discloses that the appellant, as a public utility, supplies natural gas to Mason City, Clear Lake, Manly, Kensett, Northwood, and the residents of those communities and also to patrons living near those communities; that the appellant obtains its natural gas from the Northern Natural Gas Company, which is a public utility engaged in transporting natural gas from Texas and Kansas to its various patrons; that the Northern Natural Gas Company is engaged in interstate commerce and is subject to the Federal Power Commission; that this company transports its gas through pipelines to points in Iowa, southern Minnesota, southeastern South Dakota, eastern Nebraska and a portion of northwestern Kansas; that the appellant and the Northern Natural Gas Company entered into a contract on July 10, 1942, which, with subsequent amendments, provided that the Northern Natural Gas Company would supply the appellant the entire requirements of firm gas required by it. It is also shown that the several agreements between the Northern Natural Gas Company and the appellant are subject to the general terms and conditions pertaining to gas schedules filed with the Federal Power Commission.

In December 1946 a deficiency in the supply of natural gas developed as a result of the fact that the Northern Natural Gas Company did not have pipeline capacity to take care of the demand for natural gas. At that time the natural gas company advised all gas utilities which it served to discontinue the installation of space heating equipment, and various meetings were held at which representatives of the Northern Natural Gas Company, the Federal Power Commission and the various utilities served by

the natural gas company were in attendance. As a result of the continuing deficiency in pipeline capacity various orders were made by the Federal Power Commission pertaining to the allocation of natural gas to the several utilities served by the Northern Natural Gas Company. It is further shown that in the event the appellant company took more gas than its contract and the orders previously made provided, it would be subject to a penalty of ten dollars per thousand cubic feet of gas for all of the excess consumed, and that if the appellant company used more natural gas than the contract and the orders provided, this would result in a limitation of the supply furnished to the communities north of Mason City, including the city of Minneapolis; and further, that if the appellant company connected to its lines more gas customers than could be supplied by the Northern Natural Gas Company, it would be necessary for the natural gas company to limit the supply furnished to the appellant. This restriction in the use of gas continued through 1947 and remained in effect until May 1948. During the period when there was a limitation in the amount of natural gas that could be furnished the appellant company, its representatives conferred with the mayor of Mason City and the city building commissioner relative to restrictions in the issuance of permits for the installation of gas space heating equipment. When the increased facilities were available for the furnishing of natural gas by the Northern Natural Gas Company in May 1948 to the appellant company, it endeavored to work out a plan for the allocation of the increased available gas, and rules were adopted by the appellant for the allocation of additional gas during the year 1949. These rules and regulations were different from the rules adopted by the company in 1948. It is shown that there were no new heating installations made in 1947 and that no additional gas was available for sale for space heating until during the autumn of 1948.

The trial court, in its findings of fact, found that the appellant company on or about April 7, 1948, formulated a plan and regulation pertaining to the allocation of gas supplies for space heating purposes; that such plan and regulation for the allocation of the gas supply was not submitted to and officially approved by the city council of Mason City, Iowa; that pursuant to the regu-

lations adopted by the appellant company, it accepted applications for space heating and classified them according to their own regulations; and that such additional gas allocated to the appellant company was made use of to the extent that all available gas was used and the appellant company refused to allocate any further gas or to permit any further connections for space heating. The trial court held in its conclusions of law that the Northern Natural Gas Company was at all times engaged in interstate commerce; that under the provisions of the Natural Gas Act it was subject to the control of the Federal Power Commission; that the franchise granted by the city of Mason City to the appellant company for the distribution of gas was a contract between the city and the appellant company and required it to furnish gas to applicants without discrimination; that the plan or regulations of the appellant company was a limitation upon the use of gas to new customers for space heating and was in violation of the provisions of the franchise; that the appellant company was not engaged in interstate commerce and was not subject to the provisions of the Natural Gas Act as administered by the Federal Power Commission. One of the provisions of the franchise ordinance given to the appellant company provides that "* * * said grantee is authorized to make all necessary rules and regulations with respect to furnishing the service herein provided for not inconsistent with the laws of Iowa, the provisions of this ordinance, or other constituted authority. All rules and regulations made under the authority hereof shall be first approved by the city council of Mason City, Iowa, before being placed in force."

The appellant, as grounds for reversal, maintains: (1) that the order of the Federal Power Commission was made under the authority of the Natural Gas Act and that the allocation of the gas by the appellant to the inhabitants of the cities and towns which it served had to comply with the orders and regulations of the Federal Power Commission and that the right of the appellant to allocate the gas received by it is derived from the Federal Power Commission to regulate commerce between the states; (2) that the franchise ordinance does not require the appellant to furnish the full requirements of the communities served under the conditions shown; (3) that the appellant was given authority

under the franchise to make all necessary rules and regulations with respect to supplying gas to Mason City and its inhabitants, and the fact that the ordinance provides such rules must first be approved by the city council does not limit or restrict the power to make such rules nor does it make them void if they are fair and reasonable; (4) that the rules and regulations under which allocations of gas were made by the appellant were not such rules and regulations as were contemplated by the ordinance requiring them to be first approved by the city council; (5) that the appellant had the power under the common law to make and enforce such rules and regulations as are necessary in the operation of its business, provided they are reasonable, fair and without discrimination; (6) that the appellant was entitled to injunctive relief to protect it and the inhabitants of the communities served by it from irreparable injury.

I. Title 15, chapter 15B, section 717–717w, U.S.C.A., relates to regulation and transportation of natural gas. In section 717(a) it is stated: "* * * that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest."

One of the questions presented is whether interstate transportation of natural gas and the orders of the Federal Power Commission carry over so as to affect the local distribution of that product by a local utility. In commenting upon this particular question it was stated in Illinois Natural Gas Co. v. Central Illinois Pub. Serv. Co. and Illinois Commerce Comm. (1941), 314 U. S. 498, 504, 62 S. Ct. 384, 386, 86 L. Ed. 371, 375:

"This court has held that the retail sale of gas at the burner tips by one who pipes the gas into the state, or by one who is a local distributor acquiring the gas from another who has similarly brought it into the state, is a sale in intrastate commerce, since the interstate commerce was said to end upon the introduction of the gas into the service pipes of the distributor. Public Utilities Commission v. Landon, 249 U. S. 236, 63 L. Ed. 577, 39 S. Ct. 268; East Ohio Gas Co. v. Tax Commission, 283 U. S. 465, 75 L. Ed. 1171, 51 S. Ct. 499."

In the instant case there is no question but that the appellant receives its supply of natural gas from the interstate distributor outside of the city of Mason City. There are many authorities which have been cited by the appellant which deal with the interstate character of the transportation of natural gas, but a reading of these authorities convinces us that they do not pertain to a situation such as is presented in the instant case. We do not believe that the Natural Gas Act, supra, and the orders of the Federal Power Commission have any jurisdiction over the local distribution of natural gas by a local utility. The initial case cited definitely supports this holding. In Panhandle Eastern Pipeline Co. v. Public Serv. Comm. of Indiana, 332 U. S. 507, 68 S. Ct. 190, 92 L. Ed. 128, it was held that neither the Federal Natural Gas Act nor the commerce clause of the constitution of its own force prevents state regulation of rates for natural gas sold by an interstate pipeline to local customers. In this case an interstate pipeline carrier sold direct to industrial consumers in Indiana, and it was therein held that the Public Service Commission of that state could regulate the rates charged to local industrial consumers served by an interstate natural gas carrier. See Public Serv. Comm. v. Panhandle Eastern Pipeline Co., 224 Ind. 662, 71 N.E.2d 117. Our attention has been called to the case of the Federal Power Comm. v. East Ohio Gas Co. (1950), 338 U. S. 464, 472, 70 S. Ct. 266, 271, 94 L. Ed. 268, 277. We have read this case as well as many of the authorities therein cited. In it there was interstate transportation of natural gas into the state of Ohio which, in turn, connected with high pressure lines of the Ohio Gas Company. The Ohio Gas Company, in turn, transported the natural gas to local distribution systems of the Ohio company. It was held that the flow of natural gas through the high-pressure lines within Ohio and before it reached the local distribution system was interstate commerce and subject to the provisions of the Natural Gas Act. This is not the situation we have in the instant case.

However, in the last cited case the Supreme Court of the United States stated:

"In a series of cases * * * this court had declared that states could regulate interstate gas only after it was reduced in pressure

and entered a local distribution system. Public Utilities Comm. v. Landon, 249 U. S. 236, 243, 39 S. Ct. 268, 63 L. Ed. 577; State of Missouri v. Kansas Natural Gas Co., 265 U. S. 298, 310, 44 S. Ct. 544, 546, 68 L. Ed. 1027; Public Utilities Comm. v. Attleboro Steam & Electric Co., 273 U. S. 83, 89, 47 S. Ct. 294, 296, 71 L. Ed. 549; and see East Ohio Gas Co. v. Tax Comm., 283 U. S. 465, 470–472, 51 S. Ct. 499, 500–501, 75 L. Ed. 1171."

In the Federal Power Comm. v. Panhandle Eastern Pipeline Co., 337 U. S. 498, 503, 69 S. Ct. 1251, 1255, 93 L. Ed. 1499, the supreme court quoted from the prior case of Panhandle Eastern Pipeline Co. v. Public Serv. Comm. of Indiana, 332 U. S. 507, 516, 68 S. Ct. 190, 195, 92 L. Ed. 128, as follows:

"This section determines the Act's coverage and does so in the light of the situation existing at the time. Three things and three only Congress drew within its own regulatory power, delegated by the Act to its agent, the Federal Power Commission. These were: (1) The transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale."

In the Federal Power Comm. v. Panhandle Eastern Pipeline Co., supra (page 504), it was further stated:

"The Act, moreover, expressly exempts from its coverage (1) any other transportation or sale of natural gas; (2) the local distribution of natural gas; (3) the facilities used for local distribution; and (4) the production and gathering of natural gas."

It is our conclusion that under the authorities previously set forth there can be no question but that the local distribution of natural gas in Mason City did not come within the provisions of the Natural Gas Act and was not affected or controlled by any rules or regulations made by the Federal Power Commission. Consequently, we hold that the trial court was correct in its conclusion that the appellant company was not engaged in interstate commerce and was not subject to the provisions of the Natural Gas Act as administered by the Federal Power Commission.

■ II. The question whether the provision of a franchise ordinance shall be followed under conditions such as are claimed 'by the appellant has received consideration of other courts. In the case of State ex rel. Wood v. Consumers Gas Trust Co., 157 Ind. 345, 355, 61 N.E. 674, 678, 55 L.R.A. 245, 249, it was shown that there was a deficiency of natural gas obtainable by the utility. It was therein held:

"The principal argument of appellee's counsel is, that not having sufficient gas to supply its present customers, and having exhausted every available means for increasing its supply, it is therefore impossible for it to perform its public duty, and mandamus will not lie to compel an attempt to perform a duty impossible of performance. We concede in the fullest terms that mandamus will not lie to require an attempt to do a thing shown to be impossible. But this is not the question we have before us. The relatrix is not asking, nor the court commanding, that the company attempt to increase its supply of gas. The relatrix is only seeking to be permitted to share in the quantity of gas the company has at its command, whatever that may be, on the same terms that others are permitted to use it. There is in the request of the relatrix nothing unreasonable and nothing impossible of performance."

This last cited case and holding is followed in Indiana Natural Gas & Oil Co. v. State ex rel. Armstrong, 162 Ind. 690, 71 N.E. 133. In Newman v. East Ohio Gas Co. (1948), 149 Ohio St. 360, 366, 78 N.E.2d 897, 900, the Ohio court states:

"This case presents a proper occasion for the intervention of a court of equity to protect the inhabitants of the city from arbitrary action on the part of the company. The franchise contract was completed December 16, 1946; on February 6, 1947, by company rule gas deliveries were forbidden to new industries, to new homes, to owners converting from other fuels to gas heating and to gas heating consumers installing new gas equipment which used additional gas. * * *

"It cannot be permitted to thus alter such provisions by the mere filing of a rule, although formally approved by the commission."

The appellant has referred to the case of City of Akron v. Public Utilities Comm. (1948), 149 Ohio St. 347, 78 N.E.2d 890, where the one question considered by the court was whether the state public utilities commission had authority to adopt emergency rules and regulations which in effect suspend for a limited period the operation of certain terms of a contract entered into by a municipality and a public utility for gas to be furnished to the residents of the city. It was there held that the utilities commission could make such an order. We do not believe that this case is controlling in that in the cited case the parties were a city and a public utility while in the instant case the parties are a customer and a utility. In the cited case it was an appeal from a public utilities commission.

As bearing upon the question considered in this division, reference is made to opinions of the Wisconsin Public Service Commission, to wit: Murphy v. Northern States Power Co. (1942), 46 Public Utilities Reports 148; In re Northern States Power Co. (1944), 53 Public Utilities Reports 43.

III. The statements and holdings heretofore set out seem determinative of the contentions made by the appellant relative to its right to the establishment and promulgation of reasonable and fair rules. However, in addition to these holdings, we are satisfied that the provision of the franchise which provides that "All rules and regulations made under the authority hereof shall be first approved by the city council of Mason City, Iowa, before being placed in force" is the final answer to appellant's claims. There was no compliance with the franchise ordinance. It was for the city council to first determine whether the rules and regulations were fair and reasonable.

It is our conclusion that the trial court should be affirmed. —Affirmed.

BLISS, OLIVER, MULRONEY, HAYS, and THOMPSON, JJ., concur.

GARFIELD and SMITH, JJ., dissent.

MANTZ, J., not sitting.

GARFIELD, J. (dissenting)—I respectfully dissent.

Some facts either not mentioned or not made clear in the

majority opinion should be stated. When defendant applied to plaintiff for gas service on March 19, 1948, it appears without dispute "he made some statement about wanting gas for the water heater if he could get gas run into the building. * * * he wanted to purchase from us a water heater to be used for a shower for his employees." It is not denied that defendant's garage at all times material here was equipped with an oil burner and coal furnace for space heating.

In December 1948, when plaintiff discovered defendant, without consent, had been using gas piped into his garage (pursuant to the above application) not only for a water heater, but for space heating, plaintiff informed defendant gas was not then available for such purpose. "* * * it was agreed Mr. Herme would be off by the 15th of January, 1949." This testimony, also undisputed, is taken to mean defendant agreed to discontinue use of gas for space heating.

In April 1949, when defendant applied to plaintiff for gas for another building used by him at 243 18th Street Southeast, near his garage, "He made the statement he would put in for 243 18th Street Southeast and then if his application did not receive an approval number it didn't make a damn to him anyway; he would just pipe it over from his other building [garage]." There is no denial of this.

As the majority states, the Northern Natural Gas Company which had contracted to furnish plaintiff all gas required by it for twenty years was subject to the orders of the Federal Power Commission. "This contract was canceled by the Federal Power Commission and a new one substituted." The Federal commission recognized that an emergency existed because of the extraordinary demands for gas for space heating.

After the Northern Company allocated gas to plaintiff and its other customers, plaintiff seems to have made every reasonable effort to procure more gas from Northern even to the extent of bringing suit (with others) against it in federal court. Plaintiff purchased all the gas allocated to it. This allocation of gas to plaintiff by Northern pursuant to the order of the Federal Power Commission left plaintiff with no other recourse than to place

some restrictions upon the use of gas by plaintiff's customers and prospective customers.

In March 1948, Northern increased its supply of gas to plaintiff although the increase was insufficient for plaintiff to meet all demands upon it. Plaintiff then promptly formulated and published in newspapers in April 1948 rules under which this added supply of gas would be available to residents of the communities served by it. After plaintiff obtained another additional allocation of gas from Northern in 1949, still insufficient for plaintiff's needs, new rules were adopted and published in April of that year and the 1948 rules were discarded. Defendant made no application for gas for space heating the garage under the 1948 or 1949 rules.

It is true neither the 1948 nor the 1949 rules were submitted to the city council for approval and the franchise ordinance states that all rules "made under the authority hereof shall be first approved by the city council * * * before being placed in force." I disagree with the majority holding that under the circumstances here failure of the council to approve the rules is fatal to plaintiff's right to relief.

The franchise ordinance, immediately preceding the provision just quoted, clearly grants plaintiff the authority "to make all necessary rules and regulations with respect to furnishing the service herein provided for not inconsistent with the laws of Iowa, the provisions of this ordinance, or other constituted authority."

That rules were necessary for the allocation of gas after plaintiff's source of supply had been reduced seems obvious. Because of circumstances beyond its control plaintiff was unable to procure sufficient gas to supply the demands of all its customers and prospective customers. It is not contended the rules adopted by plaintiff were inconsistent with Iowa laws, the provisions of the ordinance "or other constituted authority."

There is neither pleading nor proof that such rules were unfair, unreasonable or unduly discriminatory. There is no indication the city council would not have approved the rules if they had been submitted to it. Nor does it appear there was any basis for the council to refuse to approve the rules.

Plaintiff's 1948 rules merely provided that applications must

be made to plaintiff for gas for heating purposes and they would be granted in this order: (1) Owners or builders of new homes under construction or planned to be ready for heat by November 15, 1948. (2) Owners or builders of homes recently completed who provided for gas heat in their building plans. (3) Owners wishing to install gas heat to replace existing equipment which is incapable of operation and cannot be repaired at reasonable cost. (4) Others desiring gas for space heating.

I think it is common knowledge that similar rules were adopted by furnishers of gas in numerous Iowa communities during the period here in question.

It is plain defendant was in the fourth class designated in the above rules. It is fairly to be inferred from the record there were several hundred in Mason City alone (with a population of some 27,000), not to mention the other communities served by plaintiff, who were in greater need of gas for heating than defendant. To permit defendant to take matters in his own hands and procure gas heat without consent in plain disregard of reasonable rules adopted by plaintiff, even though they were not submitted to the council for approval, seems to reward inequitable conduct and give defendant an unfair advantage over many applicants for gas heat with a stronger claim than defendant.

Under the circumstances here plaintiff was not obligated during the time in question to furnish gas for heating to everyone who desired it regardless of need. The franchise ordinance itself provides plaintiff "shall at all times, unavoidable circumstances only excepted, * * * furnish all gas required by * * * the inhabitants * * *." The reduction in plaintiff's supply of natural gas, pursuant to directions of the Federal Power Commission to which the Northern company is admittedly subject, was an unavoidable circumstance.

Birmingham v. Rice Bros., 238 Iowa 410, 416, 417, 26 N.W. 2d 39, 42, 43, 2 A.L.R.2d 1108, after quoting from different authorities as to the obligations of public utilities, makes this statement, "Neither by common law nor any statute (called to our attention) is any public utility required to serve all. The conduct prohibited is always *unjust* discrimination, *unfair* rates or practices, or *unreasonable* rules."

By the foregoing test plaintiff was under no obligation during the time here involved to supply defendant with gas to heat his garage. I think plaintiff was entitled to the relief prayed and therefore I would reverse.

SMITH, J., joins in this dissent.