Matthias, J.
The determinative issue in this case is whether a municipal ordinance requiring electric power companies to place wires carrying in excess of 33 KV (33,000 volts) underground constitutes a valid exercise of the police power.
There is no question that such companies are subject to reasonable regulation in relation to the construction of their lines.
Section 715.27, Revised Code, provides:

“Any municipal corporation may:

ÍÉ* *
“(B) Regulate the construction and repair of wires, poles, plants, and all equipment to be used for the generation and application of electricity * * (Emphasis added.)
Section 4933.13, Revised Code, provides:
“A company organized for supplying electricity for power purposes, and for lighting the streets and public and private buildings of a municipal corporation, may manufacture, sell, and furnish the electric light and power required in such municipal corporation for such or other purposes. With the consent of the municipal corporation, under such reasonable regulations as such municipal corporation prescribes, such company may construct lines for conducting electricity for power and light purposes through the streets, alleys, lanes, lands, squares, and public places of such municipal corporation,- by *479 the erection of the necessary fixtures, including posts, piers, and abutments necessary for the wires.” (Emphasis added.)
Section 4933.16, Revised Code, provides:
“No person or company shall place, string, construct, or maintain a line, wire, fixture, or appliance of any kind to conduct electricity for lighting, heating, or power purposes through a street, alley, lane, square, place, or land of a municipal corporation without the consent of such municipal corporation.
“This prohibition extends to all levels above or below the surface of such public ways, grounds, or places, as well as along their surfaces, but not to rights received through and exercised under proceedings of a Probate Court prior to February 26, 1910.
“The penalty provided by Section 4933.99 of the Revised Code for a violation of this section is cumulative to other means of enforcing this section open to the municipal corporation, by way of injunction or otherwise, and is not exclusive.” (Emphasis added.)
As may be seen from the above sections, not only are municipal corporations specifically empowered to impose reasonable regulations in respect to the construction of the lines of such electric power companies, but such sections also provide that the consent of the municipality must be obtained before such lines are constructed. The requirement of consent necessarily implies that the municipality may impose reasonable regulations and conditions as to such construction as a condition to its consent. To interpret such requirement otherwise would be to hold that the requirement of consent is a mere empty thing of no meaning. This we cannot do, since it is a basic presumption in statutory construction that the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose.
It being determined that a municipal corporation may impose reasonable regulations upon an electric power company in the construction of its lines, is a regulation requiring high-voltage wires to be placed underground reasonable?
*480 The test for determining whether certain legislation constitutes a valid exercise of the police power was set out by this court in the first paragraph of the syllabus of Teegardin v. Foley, 166 Ohio St., 449, 143 N. E. (2d), 824, as follows:
“In order to constitute a valid exercise of the police power, legislation must directly promote the general health, safety, welfare or morals and must be reasonable, the means adopted to accomplish the legislative purpose must be suitable to the end in view, must be impartial in operation, must have a real and substantial relation to such purpose and must not interfere with private rights beyond the necessities of the situation. (Paragraph three of the syllabus of Froelich v. City of Cleveland, 99 Ohio St., 376, approved and followed.)”
Judicial notice may be taken that high-voltage electricity by its nature is a very dangerous commodity, and that high-voltage electric wires stretched across public streets constitute a danger to the traveling public. 18 American Jurisprudence, 508, Electricity, Section 112.
The fact that in our present civilization electricity has become a necessity and is a matter of everyday use in no way affects its dangerous character. Modern science and engineering have perfected safety devices which have made it usable with a reasonable degree of safety. However, so-called high-tension wires, carrying heavy-voltage current, still remain a source of great danger. While methods of installing and maintaining overhead lines have improved and mechanical safety devices have been perfected which have reduced the danger, the danger is still there. Mechanical safety devices fail, and, in spite of engineering advancements, metal in electric-power-line towers may still crystallize, insulators fail or, for some unexplainable reason, such a tower may give way creating a tremendous hazard to life and property.
Relator contends that its lines will go through an industrial district, and that, therefore, there is no reason to require underground installation. If our problem was purely a question of aesthetics, relator’s arguments would be valid. How *481 ever, we are not concerned primarily with the aesthetic but must direct our attention to the question of public safety. The danger created by high-voltage wires in an industrial district, with its storage tanks of inflammable and explosive materials, the moving of heavy trucks, cranes and other machinery and its heavy population of workers, is equal to if not greater than in residental districts.
Considering the dangerous propensities of high-voltage electricity, it is our conclusion that a requirement by a municipality that high-voltage wires be placed underground constitutes a reasonable exercise of the police power.
The last issue which must be determined is the effect of the original franchise granted relator by the municipality in 1906.
The pertinent parts of the ordinance (No. 32) which grants the franchise are as follows:
“An ordinance granting the Cleveland Electric Illuminating Company and its successors, the right to erect, construct, maintain and use the necessary poles, wires, conduits and such other fixtures and appliances, overhead and underground, as may be deemed by it or them necessary or essential to enable it or them to transmit electricity through and along the streets, alleys and ways of the village of Euclid, for the purpose of furnishing to said village, the general public and private persons, light, heat and power by electric currents.
“Section 1: Be it ordained by the Village Council of the Village of Euclid, State of Ohio, that the Cleveland Electric Illuminating Company and its successors, be, and they are hereby granted the right to erect, construct, maintain and use the necessary poles, wires, conduits, and such other fixtures and appliances overhead and underground, as may be deemed by it or them necessary or essential to enable it to transmit electricity through and along the streets, alleys and ways of the village of Euclid for the purpose of furnishing to said village the general public and private persons, light, heat and power by electric currents.
*482 “Section 2: All wires used by the Cleveland Electric Illuminating Company shall be properly insulated, and shall comply with all state regulations and ordinances to be passed by this village requiring proper insulation and until such ordinances are passed, all of said wires shall comply, as regard to insulation, with the ordinances of the city of Cleveland. And this grant shall be subject to all general ordinances now or hereafter m force in said village.
“Section 3: The Cleveland Electric Illuminating Company or its successors shall, before any work is commenced, submit to the proper officers of the village, plans, showing the work it proposes to do in the erection of poles, wires, appliances, or in the building of conduits, and receive a proper permit therefor each time before any new work, shall be undertaken, and they shall be kept upon file in the office of the village clerk with a proper record, showing that a permit for their construction has been entered, and thereupon the Cleveland Electric Illuminating Company or its successors shall have the right to proceed with its or their work in accordance with the plans and specifications placed on file by it or them.” (Emphasis added.)
It is relator’s contention that such franchise constitutes a contract, and that the municipality can impose no regulations or conditions as to the construction of lines which are not provided therein.
We assume, without deciding, that the franchise evidenced by the ordinance is a contract, and we note that the emphasized portions of the ordinance specifically reserve to the municipality the right to impose additional regulations by ordinance in the future. However, even had such reservations not been specifically included in the contract, it is nevertheless subject to police regulations. In the third paragraph of the syllabus of City of Akron v. Public Utilities Commission, 149 Ohio St., 347, 78 N. E. (2d), 890, this court said:
“All contracts are subject to the paramount rights of the public, and all contracts the subject matter of which involves the public welfare will have redd into them with the same force *483 and effect, as if expressed in clear and definite terms, all valid public regulations then existing or thereafter enacted, essential for the promotion of the health, safety and welfare of the people. The authority of the state to exercise its general police power must be recognized as an implied condition of any such contract. ’ ’ (Emphasis added.)
Thus, even though this franchise were a contract, it would still be subject to regulations adopted as a valid exercise of the police power, and, we having determined that the ordinance in question constitutes a valid exercise of the police power, the contract would be subject thereto.
Since under the terms of ordinance No. 78-1957 relator has no right to erect power lines carrying more than 33,000 volts ■above ground, it has no right to the relief prayed for.
In conclusion, we find:
I. Sections 715.27, 4933.13 and 4933.16, Revised Code, specifically provide that by virtue of its police power a municipality may prescribe reasonable regulations for the installing of electric power lines through or into its territorial limits and may withhold its consent for the installation of such power lines until such regulations are complied with.
II. A municipal ordinance which provides that all electric power lines installed within or through the municipality’s territorial limits and carrying greater voltage than 33 KV (33,000 volts) shall be installed underground is not an unreasonable regulation unrelated to the health, safety and welfare of the inhabitants of the municipality.
For the reasons herein set out, the judgment of the Court of Appeals is reversed.

Judgment reversed.

Zimmerman, Taet and Bell, JJ, concur.
Weygandt, C. J., Herbert and Peck, JJ., dissent.