PUBLIC UTILITIES COMMISSION FOR THE STATE OF KANSAS ET AL. *v.* LANDON, RE-CEIVER OF THE KANSAS NATURAL GAS COMPANY, ET AL.

KANSAS CITY, MISSOURI, ET AL. *v.* LANDON, RECEIVER OF THE KANSAS NATURAL GAS COMPANY, ET AL.

KANSAS CITY GAS COMPANY ET AL. *v.* KANSAS NATURAL GAS COMPANY ET AL.

PUBLIC UTILITIES COMMISSION FOR THE STATE OF KANSAS ET AL. *v.* LANDON, RECEIVER OF THE KANSAS NATURAL GAS COMPANY, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Nos. 277, 329, 330, 353. Argued November 6, 1918.—Decided March 17, 1919.

The District Court, having extended its receivership under Jud. Code, § 56, over the entire business and property of a company engaged in interstate transportation and sale of gas in several States of the circuit, has jurisdiction of a dependent bill brought by the receivers to enjoin officials of those States from imposing rates alleged to be confiscatory, and burdensome to the interstate business. P. 244. See 234 Fed. Rep. 152, 155.

Interstate commerce is a practical conception, and what falls within it must be determined upon considerations of established facts and known commercial methods. P. 245.

While the piping of natural gas from State to State, and its sale and delivery to independent local gas companies, is interstate commerce, the retailing of the gas by the local companies to their consumers is intrastate commerce and is not a continuation of such interstate commerce, even though their mains are connected per-

manently with those of their vendor and their vendor's agreed compensation is a definite proportion of their gross receipts.  *Id.*
In such case, regulation of the rates chargeable by the local companies has but an indirect effect upon the interstate business of the transporting and selling company; at least when the latter is in the hands of receivers who have not accepted or become bound by the contracts with the former; and such receivers, not being obliged to accept unremunerative prices, have no ground to complain that rates fixed for the local companies are confiscatory, or are burdensome to the interstate business, even though that business consists exclusively in selling the gas to such local companies.  P. 246.
234 Fed. Rep. 152; 242 Fed. Rep. 658; 245 Fed. Rep. 950, reversed.

THE case is stated in the opinion.    (See also, *post*, 591.)

*Mr. F. S. Jackson* for Public Utilities Commission for the State of Kansas *et al.*

*Mr. Robert Stone* and *Mr. Chester I. Long*, with whom *Mr. John H. Atwood, Mr. George T. McDermott, Mr. Austin M. Cowan, Mr. R. A. Brown, Mr. T. S. Salathiel* and *Mr. John J. Jones* were on the briefs, for Landon, Receiver; Kansas Natural Gas Co.; and Sharitt, Receiver:[1]

That the court below had jurisdiction over the Kansas and Missouri defendants because of the ancillary and dependent character of the suit, see 234 Fed. Rep. 154; *Phœnix Ry. Co. v. Geary*, 239 U. S. 277; *Krippendorf v. Hyde*, 110 U. S. 276; *White v. Ewing*, 159 U. S. 36.

---

[1] For the cases involving this controversy in various phases, see: *McKinney v. Kansas Natural Gas Co.*, 206 Fed. Rep. 772; *McKinney v. Landon*, 209 Fed. Rep. 300; *Kansas City Pipe Line Co. v. Fidelity Title & Trust Co.*, 217 Fed. Rep. 187; *Fidelity Title & Trust Co. v. Kansas Natural Gas Co.*, 219 Fed. Rep. 614; *State v. Flannelly*, 96 Kansas, 372; s. c., 96 Kansas, 833; *Landon v. Public Utilities Commission*, 234 Fed. Rep. 152; *State v. Litchfield*, 97 Kansas, 592; *State v. Kansas Natural Gas Co.*, 100 Kansas, 593; *State v. Gas Company*, 102 Kansas, 712; *Landon v. Public Utilities Commission*, 242 Fed. Rep. 658; *Landon v. Public Utilities Commission*, 245 Fed. Rep. 950; *St. Joseph Gas Co. v. Barker*, 243 Fed. Rep. 206.

There is no misjoinder of causes. The property is a unit, to be protected as such.

The protection of the commerce clause extends not only to the transportation of the article, but also to the sale of the article when it arrives at its destination. *Heyman* v. *Hays*, 236 U. S. 178; *Pipe Line Cases*, 234 U. S. 548; *Brown* v. *Maryland*, 12 Wheat. 419; *American Express Co.* v. *Iowa*, 196 U. S. 133; *Minnesota* v. *Barber*, 136 U. S. 313; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1, 24. The transportation and sale of natural gas in interstate commerce is national in character. *Haskell* v. *Cowham*, 187 Fed. Rep. 403; 234 Fed. Rep., at p. 164; *West* v. *Kansas Natural Gas Co.*, 221 U. S. 229; *Haskell* v. *Kansas Natural Gas Co.*, 224 U. S. 217; this case, 242 Fed. Rep. 687, 689; *South Covington Ry. Co.* v. *Covington*, 235 U. S. 537; *Pipe Line Cases*, 234 U. S. 548; *Wabash &c. Ry. Co.* v. *Illinois*, 118 U. S. 557.

With one or two exceptions, the distributing companies do no business except to transport and distribute the natural gas transported in interstate commerce by the plaintiff receivers. Employment of these local agencies in itself would not authorize the State to regulate the interstate commerce conducted by the plaintiff receiver. *West* v. *Kansas Natural Gas Co.*, supra; *Western Union Telegraph Co.* v. *Foster*, 247 U. S. 105. Local incidental service at the beginning or end of the journey does not affect the interstate character. *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission*, 219 U. S. 498; *Pennsylvania R. R. Co.* v. *Clark Coal Co.*, 238 U. S. 456, 465–468; *Southern Ry. Co.* v. *Prescott*, 240 U. S. 632; *Pennsylvania R. R. Co.* v. *Sonman Coal Co.*, 242 U. S. 120. The Supreme Court of Kansas, in *State* v. *Flannelly*, 96 Kansas, 372, and *State* v. *Litchfield*, 97 Kansas, 592, took the position that the distributing companies were but the agents of the receiver of the Kansas Natural Gas Company. If so, this case comes within *Crenshaw* v.

*Arkansas,* 227 U: S. 389; *Singer Sewing Machine Co.* v. *Brickell,* 233 U. S. 304; *Davis* v. *Virginia,* 236 U. S. 697; and *Stewart* v. *Michigan,* 232 U. S. 665; for the order for the gas is given by the consumer to the distributing company long before the gas is started in the course of transportation. When the consumer connects with the distributing company's system, he thereby asks for a supply to be furnished him at all times in the future. It is with the knowledge of the demands of these consumers, and for the purpose of supplying them, that the receiver starts his natural gas in the course of transportation from Oklahoma to Kansas.

The use of the distributing companies' systems in the distribution and sale of natural gas does not change the interstate character of the commerce. As the court below found (242 Fed. Rep. 681), the transportation does not cease until the gas is consumed. The contention that the gas is at rest, that the whole pipe line system constitutes one huge reservoir from which the gas is taken off as needed by the consumers, is not supported by the evidence and is contrary to the court's finding.

Plurality of carriers does not affect the question. *South Covington Ry. Co.* v. *Covington,* 235 U. S. 537.

There may be a change of ownership in transit without affecting the character of the shipment. *Gulf, Colorado & Santa Fe Ry. Co.* v. *Texas,* 204 U. S. 403. It is the purpose and intent with which a shipment is commenced that determines. *Kelley* v. *Rhoads,* 188 U. S. 1, 23; *Swift & Co.* v. *United States,* 196 U. S. 375.

The present case is much stronger than the *Swift Case,* for here the gas moves without interruption or change in ownership from the gas fields in Oklahoma to consumers in Kansas and Missouri. It is more than a recurring course of dealing. It is constant and continuous. When it is started in its course it is with the intent and purpose that it shall be delivered to consumers without interruption

in transportation. See also *Southern Pacific Terminal Co.
v. Interstate Commerce Commission*, 219 U. S. 498; *Texas
& New Orleans R. R. Co. v. Sabine Tram Co.*, 227 U. S.
111; *Railroad Commission of Louisiana v. Texas & Pacific
Ry. Co.*, 229 U. S. 336; *Pennsylvania R. R. Co. v. Clark
Coal Co.*, 238 U. S. 456; *Pennsylvania R. R. Co. v. Son-
man Coal Co.*, 242 U. S. 120; *Atchison, Topeka & Santa
Fe Ry. Co. v. Harold*, 241 U. S. 371; *Railroad Commis-
sion v. Worthington*, 225 U. S. 101. The distributing com-
panies occupy the same position as connecting carriers,
and the gas moves in a like manner as if a carload of coal
was shipped from Oklahoma over a railroad, delivered
to a terminal company at the outskirts of the city, and
by the terminal company delivered to the consignee.
*United States v. Terminal Association of St. Louis*, 224
U. S. 383; *Southern Pacific Terminal Co. v. Interstate
Commerce Commission*, 219 U. S. 498.

Incidental storage in the pipe lines and holders does
not destroy the interstate character of the movement;
nor does the drawing out of the gas for consumption as the
movement progresses. *Western Transit Co. v. Leslie &
Co.*, 242 U. S. 448; *Western Union Telegraph Co. v. Foster*,
247 U. S. 105. The original package doctrine is applicable
only to goods which have come to rest after their inter-
state journey and are intended to be transported no further
in interstate commerce.

The mixing of intra- and interstate natural gas in the
same pipe lines does not give the State authority over
the mass. *State v. Stock Yards Co.*, 94 Kansas, 96, 99;
*Minnesota Rate Cases*, 230 U. S. 352.

The gas in both main and service pipes belongs to the
receivers and is paid for by the consumer at his meter.
The receiver must bear all the loss from leakage; and gets
nothing for the gas delivered if the consumer does not pay.
The theory that the interstate transportation ends with
a sale and delivery to the distributing company where the

latter's pipe connects with the trunk line, is fallacious, for there is no such delivery—the gas passes in freely and continuously; nor any sale—the distributor never owns the gas, and merely collects from the consumers and accounts to the receiver for his proportion (upon which the latter depends for all his expenses and profit), acting for him in a representative capacity, whether as agent or connecting carrier is immaterial.

The fixing of the price at which the gas may be sold is therefore the fixing of the rate for transportation and a direct interference with interstate commerce.

The supply contracts do not bind the receiver, because he has never adopted them; because they are void under the Federal, Kansas and Missouri Anti-Trust Acts; because of changed conditions; and because the bases of these contracts—rate provisions of the franchise ordinances —are void for want of power in the cities and have been violated and disregarded by them.

The rates fixed by the Kansas Commission are confiscatory and violate due process.

*Mr. James D. Lindsay,* with whom *Mr. Frank W. Mc-Allister,* Attorney General of the State of Missouri, *Mr. W. G. Busby* and *Mr. A. Z. Patterson* were on the brief, for Public Service Commission of Missouri.

*Mr. A. F. Smith,* with whom *Mr. E. M. Harber, Mr. Benj. M. Powers, Mr. Ray Bond* and *Mr. Chas. L. Faust* were on the briefs, for Kansas City, Joplin and St. Joseph, Missouri.

*Mr. Charles Blood Smith* for Fidelity Title & Trust Co.

*Mr. J. W. Dana* for Kansas City Gas Co. *et al.*

*Mr. Leonard S. Ferry, Mr. Thomas F. Doran, Mr. M. F. Cosgrove, Mr. J. M. Challis* and *Mr. Floyd Harper* filed a brief on behalf of various distributing companies.

Mr. Justice McReynolds delivered the opinion of the court.

These are appeals by different groups of defendants below from decrees prohibiting public commissions and officers of Kansas and Missouri, certain municipalities and many local gas distributing companies from interfering with establishment and maintenance of selling rates for gas to consumers sufficiently high to compensate receivers of the Kansas Natural Gas Company. 234 Fed. Rep. 152; 242 Fed. Rep. 658; 245 Fed. Rep. 950.

The Kansas Natural Gas Company—hereinafter, The Gas Company—a Delaware corporation, owned a system of pipe lines extending from Oklahoma and Kansas points to some forty terminal towns and cities in Kansas and Missouri and produced, purchased, transported, distributed and sold natural gas prior to October 9, 1912. During the years 1904–1908 by separate agreements it undertook to supply many local companies with gas for ultimate sale to their customers and to accept therefor a definite proportion—generally two-thirds—of the gross amounts paid by such customers. Permanent physical connections permitted gas to pass from The Gas Commany's pipe lines into the several local companies' mains. The latter operated under special ordinances usually specifying the rates which customers should pay; and, except in four relatively unimportant places, the former had no local franchise permitting either distribution or sale of gas, nor did it own any interest in a defendant distributing company.

The Gas Company procured gas by drilling, purchase or otherwise in Southern Kansas and Oklahoma—six per cent. in the former—forced it through pipe lines and delivered it in the local mains at the connection points. None was obtained in Missouri. Having received gas at the connection points the several local companies dis-

tributed and sold it, collected established rates and settled with The Gas Company as agreed. Approximately forty-four per cent. of the total was thus sold to customers in Kansas and fifty-six per cent. in Missouri.

October 9, 1912, the United States District Court for Kansas appointed receivers for The Gas Company and shortly thereafter, acting under § 56, Judicial Code, extended the receivership to Missouri and Oklahoma. It is unnecessary to detail subsequent changes in respect of this receivership. The receivers took over the company's property, affairs and business and operated them under orders of the court; without specifically adopting or disavowing the supply contracts of 1904–1908 they continued to deliver gas to local distributing companies and to accept payments as originally agreed.

Available gas diminished; pipe lines to new wells became necessary; operating costs increased; and the sums received from local distributing companies were inadequate for the receivers' demands. In 1915 they petitioned the Kansas Public Utilities Commission to permit higher charges to customers by local companies. Responding the Commission authorized, December 10, 1915, what is known as the "28 Cent Schedule"—much below the rates requested.

Claiming jurisdiction over distribution and sale of gas in that State and power to fix the rates which local companies should both pay and charge therefor, the Missouri Public Service Commission suspended some proposed advanced rates to consumers and threatened to enforce further appropriate orders if found necessary. Certain local companies, notably the Kansas City Gas Company, insist that the receivers should comply with the original supply contracts between them and The Gas Company.

In December, 1915, the receivers began this proceeding against Kansas Public Utilities Commission, Missouri Public Service Commission, thirty-two local distributing

companies and forty-seven cities and towns in those States. After setting out the history of The Gas Company the bill alleged that the above-described actions by state commissions resulted in imposing upon the receivers inadequate and confiscatory rates and unduly burdened the interstate commerce which they were carrying on by transporting and selling gas; that the original supply contracts with distributing companies, although never adopted by them, were improvident, wasteful, a fraud upon creditors and no longer obligatory; that the city ordinances fixing prices to customers were unreasonable, non-compensatory and confiscatory of estate and property in the receivers' hands. They asked an appropriate injunction restraining the commissions, municipalities and distributing companies from interfering with establishment of reasonable and compensatory rates for selling gas to consumers.

The court below held the business carried on by the receivers—transportation of natural gas and its disposition and sale to consumers through the distributing companies —was interstate commerce of a national character; that the commissions' actions interfered with establishment and maintenance of reasonable sale rates and thereby burdened interstate commerce and took the receivers' property without due process of law; that the original supply contracts were not binding upon the receivers. And it accordingly enjoined the commissions, their members, the attorneys general of both States, the various municipalities and the distributing companies from interfering with establishment of such reasonable and compensatory rates as the court might approve.

We think the trial court properly overruled the objections offered to its jurisdiction and nothing need be added to the reasons which it gave. 234 Fed. Rep. 152, 155. But we cannot agree with its conclusions that local companies in distributing and selling gas to their customers

acted as mere agents, immediate representatives or instrumentalities of the receivers and as such carried on without interruption interstate commerce set in motion by them.

That the transportation of gas through pipe lines from one State to another is interstate commerce may not be doubted. Also, it is clear that as part of such commerce the receivers might sell and deliver gas so transported to local distributing companies free from unreasonable interference by the State. *American Express Co.* v. *Iowa*, 196 U. S. 133, 143; *Oklahoma* v. *Kansas Natural Gas Co.*, 221 U. S. 229; *Haskell* v. *Kansas Natural Gas Co.*, 224 U. S. 217.

But in no proper sense can it be said, under the facts here disclosed, that sale and delivery of gas to their customers at burner-tips by the local companies operating under special franchises constituted any part of interstate commerce. The companies received supplies which had moved in such commerce and then disposed thereof at retail in due course of their own local business. Payment to the receivers of sums amounting to two-thirds of the product of these sales did not make them integral parts of their interstate business. In fact, they lacked authority to engage by agent or otherwise in the retail transactions carried on by the local companies. Interstate commerce is a practical conception and what falls within it must be determined upon consideration of established facts and known commercial methods. *Rearick* v. *Pennsylvania*, 203 U. S. 507, 512; *The Pipe Line Cases*, 234 U. S. 548, 560. The thing which the receivers actually did was to deliver supplies to local companies. Exercising franchise rights, the latter distributed and sold the commodity so obtained upon their own account and paid the receivers what amounted to two-thirds of their receipts from customers. Interstate movement ended when the gas passed into local mains. The court below erroneously

adopted the contrary view and upon it rested the conclusion that the Public Commissions were interfering with establishment of compensatory rates by the receivers in violation of their rights under the Fourteenth Amendment. The challenged orders related directly to prices for gas at burner-tips and only indirectly to the receivers' business. They were under no compulsion to accept unremunerative prices; even the original supply contracts had not been adopted and were subject to rejection. See *Newark Natural Gas & Fuel Co.* v. *Newark*, 242 U. S. 405. Our conclusion concerning relationship between the receivers and local companies renders it unnecessary to discuss the effect of rates prescribed for the latter. The receivers were in no position to complain of them.

The decrees below must be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*