**In re GULF WATER BENEFACTION COMPANY, Debtor.**

**GULF WATER BENEFACTION COMPANY, Plaintiff,**

v.

**The PUBLIC UTILITY COMMISSION OF TEXAS, By and Through the ATTORNEY GENERAL of the State of Texas, and the State of Texas, By and Through its Secretary of State, Defendants.**

**Bankruptcy No. HB–79–95. Adversary "B".**

United States Bankruptcy Court, S. D. Texas, Houston Division.

Jan. 31, 1980.

---

Joe Alfred Izen, Jr., L. T. Bradt, Houston, Tex., for debtor.

Martha V. Terry, Asst. Atty. Gen., Austin, Tex., D. J. Baker, Fulbright & Jaworski, Houston, Tex., Special Counsel for Public Utility Commission of Texas and the State of Texas.

## MEMORANDUM OPINION

JOHN R. BLINN, Bankruptcy Judge:

This matter is before the Court on the complaint of the Debtor, Gulf Water Benefaction, seeking to enjoin the Public Utility Commission of Texas and the State of Texas from pursuing certain state court proceedings until such time as a plan is confirmed.

Gulf Water Benefaction ("Gulf Water") is a Texas corporation providing sanitary sewer service to residential and commercial customers in two subdivisions in Harris County, Texas. The Public Utility Commission of Texas (the "PUC") is a state agency charged with jurisdiction and responsibility over entities offering utility service within the State of Texas. Among the duties of the PUC are rate regulation and quality of service and for some time Gulf Water and the PUC have been involved in administrative and state court disputes on both points.

Gulf Water argues that at least since the PUC began fixing Gulf Water's rates in 1976, the operations of Gulf Water, previously profitable, have continuously suffered a negative cash flow. Thus finding itself unable to meet its obligations and disillusioned with state procedure for setting and reviewing utility rates, Gulf Water sought the protection of the bankruptcy court by filing a Chapter XI petition on January 12, 1979. That petition was subsequently dismissed for want of prosecution; in fact, no schedules, statement of affairs or statement of executory contract were ever filed on behalf of the Debtor nor was an extension

of time in which to file requested. Shortly after the dismissal, Gulf Water on February 15, 1979 filed a second Chapter XI petition, initiating the case * under which this adversary proceeding is brought.

At the time of the filing, several causes of action involving Gulf Water and the PUC were pending in the state district courts in Travis County, Texas. Two of these causes of action were scheduled for hearing before State District Judge Charles Mathews on February 15, 1979, the very day the second petition was filed. One was Cause Number 276,982, an appeal by Gulf Water and Peoples National Utility Company, Inc. ("Peoples National") of rates promulgated by the PUC in an administrative action styled "Docket 1211." The other was Cause Number 276,449, in which the PUC sought to enforce fines and penalties on Gulf Water, Peoples National and Robert E. Pine (the President and General Manager, respectively, of Gulf Water and Peoples National) for charging rates higher than those set in Docket 1211.

The first matter entertained by Judge Mathews on February 15 was a motion by the PUC to dismiss Cause Number 276,982 (the appeal) for want of prosecution. The PUC argued Gulf Water and Peoples National had filed that appeal in the fall of 1977 yet had never acted upon it or set the matter for trial. During the presentation by the PUC of its argument in favor of dismissal, one of the attorneys for Gulf Water interrupted the proceedings to present the Court with Judicial Notices of Stay issued in the XI case just that morning. Notwithstanding such notice Judge Mathews made a docket entry reflecting his decision to grant the PUC's motion to dismiss. He declined, however, to enter a written order to that effect. No further action on the matter has been taken and whether appeal times have begun to run has not yet been addressed.

Judge Mathews then turned to Cause Number 276,449 (the enforcement action)

but declined to proceed until such time as the PUC either obtained a determination by the bankruptcy court that the stay was inapplicable to that state court proceeding or secured relief from the automatic stay.

Accordingly, the PUC on February 19, 1979, filed its complaint, denominated Adversary "A", seeking a determination by the bankruptcy court that the automatic stay did not apply to Cause Number 276,449 (the enforcement action) arguing a state's enforcement of its police powers is outside the scope of the automatic stay. In the alternative the PUC sought to have the stay modified or terminated. Additionally, the PUC urged the automatic stay did not apply to co-defendants Robert E. Pine and Peoples National as neither had filed any petition for relief under the Bankruptcy Act. Adversary "A" was first heard before this Court on March 12, 1979. After hearing arguments the Court continued the matter indefinitely to allow the parties to file briefs.

On April 6, 1979, to safeguard against an adverse ruling in Adversary "A", Gulf Water filed a complaint initiating this Adversary "B" in which it attempted to set aside Judge Mathews' ruling in Cause Number 276,982 (the appeal) and to enjoin the PUC from taking further action in either that matter or Cause Number 276,449 (the enforcement action) until such time as a plan is confirmed. The PUC responded by filing a motion to dismiss primarily asserting want of jurisdiction over the subject matter. In its motion the PUC argued Cause Number 276,982 (the appeal) was an original action filed by the Debtor and Peoples National seeking relief from a rate order of the PUC and as such was not within the scope of the automatic stay. The PUC further argued Cause Number 276,449 (the enforcement action) involved the ability of a state to enforce its police powers and as such was also outside the automatic stay.

---

\* All references to "the case" or "the filing" or "the Chapter XI petition" refer to the case filed February 15, 1979, and not the earlier case filed

in January and subsequently dismissed by order of the Court.

Arguments on the PUC's motion to dismiss Adversary "B" were held May 14 at the conclusion of which the Court announced although it had doubts Gulf Water had discharged its burden in establishing jurisdiction, in the interest of judicial economy the motion would be denied. The Court set the injunction proceeding for May 17 and at the beginning of that hearing Gulf Water attempted to amend its original complaint to include the question of the validity of the rates set by the PUC. Counsel for Gulf Water noted that as the PUC had not yet filed its answer, Gulf Water was entitled to an amendment as a matter of right; however, he also admitted the delay by Gulf Water in filing the amendment and the complexity of the issue added by it, could allow the PUC successfully to argue surprise. The Court refused to allow the amendment citing the frequent arguments in the adversary proceeding and the main case as to necessity for a prompt resolution and trial proceeded on the original complaint. The matter could not be concluded on May 17 and was adjourned to June 6. The Court heard testimony June 6, 7 and 8 but again it could not be concluded and was carried over to August 27, 28, 29 and 30. Trial concluded on the evening of August 30 and a briefing schedule was set; Gulf Water was to submit its brief by September 21, PUC was to reply by October 12, and Gulf Water was to respond October 19, or one week after receipt, whichever was later.

While submission of briefs was pending, the Court on September 11 entered an order in Adversary "A" concluding the automatic stay was inapplicable to the state court proceedings, a decision significant in two respects. First, the ruling on Adversary "A" represented less a decision on the merits than default by Gulf Water to respond in any manner to the strong prima facie case developed by the PUC. On February 26 (prior to trial on March 12) the PUC had filed a lengthy memorandum in support of its position that state court actions enforcing state regulations are not encompassed by the automatic stay. Yet despite an indefinite continuance and numerous opportu-

nities for briefing, Gulf Water never provided the Court with a memorandum of authority countering the one offered by the PUC or supporting its own contentions. Second, the absence of the umbrella of the automatic stay rendered a favorable holding in Adversary "B" crucial to a plan of arrangement. Gulf Water consistently maintained only setting aside the "low" rates mandated by the PUC and thus increasing future income would permit rehabilitation. However, as explained previously, this Court had on May 17 refused amendment by the Debtor to permit a decision on the merits. Thus review of the rates set by the PUC and/or the establishment of new rates is not now before this Court in Adversary "B" but is instead the subject of an additional complaint, designated Adversary "G".

 Turning to the merits of the issues which were raised in Adversary "B", in order to obtain the injunctive relief sought Gulf Water needed to demonstrate (1) Gulf Water would suffer irreparable harm unless an injunction is granted; (2) Gulf Water has no plain, adequate or complete remedy at law; and (3) a probability Gulf Water would succeed at a final hearing on the merits. *Rondeau v. Mosinee Paper Co.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *Lewis v. S. S. Baune*, 534 F.2d 1115 (5th Cir. 1976) reh. den. 545 F.2d 1299 (5th Cir. 1977); *State of Texas v. Seatrain International*, 518 F.2d 175 (5th Cir. 1975); *Porto Rico Tel. Co. v. Puerto Rico Communications Authority*, 189 F.2d 39 (1st Cir. 1951) cert. den. 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628; *Gulf & Great Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., Inc.*, 476 F.2d 687 (2nd Cir. 1973). An applicant for a preliminary injunction need not establish an absolute right to that relief, but only a probable right. *West Virginia Highlands Conservancy v. Island Creek Coal Co.*, 441 F.2d 232 (4th Cir. 1971).

 Gulf Water met its burden in demonstrating there is a likelihood the Debtor would suffer irreparable harm if the injunction is denied. The very survival of Gulf

Water is at stake; the Debtor has presented a convincing case that the rates imposed upon it by the PUC have been too low to sustain operations and if those rates are allowed to stand it is unlikely a successful rehabilitation can be undertaken.

Where Debtor did fail to meet its burden was the second element, that it has no plain, adequate or complete remedy at law. Gulf Water alleged in its pleadings it could not receive a fair hearing in a state district court or court of appeal. One would presume Gulf Water's strongest evidence on this point would be its own witness, William Olson, Sr., a recognized expert in public utility law who represented Gulf Water before the Harris County Commissioner's Court (a prior rate-making proceeding) and the PUC. Although Mr. Olson testified he believed Gulf Water may have been subjected to harassment in the past, he advised Gulf Water to appeal the rates set by the PUC and was firmly convinced if the appeal were pursued in state court Gulf Water would ultimately receive a fair hearing. Mr. Olson also stated other small, private utility companies had experienced similar problems with state rate-making procedure in the past, but all felt by the end of the review process that even if they had not obtained the rate relief requested, at least they had received a fair hearing.

Considering all the evidence presented on this point and particularly that of Mr. Olson, we conclude the Debtor has failed to show justice could not be had in the state court system and are accordingly hesitant to intervene in a situation where the remedies available under state law have not yet been exhausted. The power to regulate intrastate services such as utilities has historically been reserved to the states by Congress pursuant to the provisions of the Tenth Amendment. U.S.Const. Amend. X; *Public Utilities Commission for State of Kansas v. Landon,* 249 U.S. 236, 39 S.Ct. 268, 63 L.Ed. 577 (1919). As the traditional forum for settling disputes of this nature, the state courts have a greater familiarity with matters at hand and are therefore better equipped to deal with problems of this nature. *License Cases,* 16 U.S. 513 (Curt.Ed.), 46 U.S. (5 How.) 504, 12 L.Ed. 256 (1846); *Munn v. Illinois,* 94 U.S. 113, 24 L.Ed. 77 (1876); *National League of Cities v. Usury,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Here we are confronted with a state statute, a state agency and a highly technical matter involving a specialized area of state procedure, utility regulation. It is our belief, at least under the circumstances of this case, the state court would be the better forum for resolving this controversy.

Gulf Water has not satisfied its burden on the second element and thus we need not pass to the third. However, in fairness to the parties who have toiled so long and hard on this matter, we indicate our view of that element. Gulf Water must demonstrate that its request for an injunction until such time as a plan is confirmed would be sustained at a hearing on the merits. As explained earlier, Gulf Water admits no plan can be confirmed unless and until the present rates are set aside and new, higher rates are established. But if this Court were to issue an injunction halting the state court actions, no rates could be set and thus no plan confirmed unless this Court is willing to undertake the rate-making function itself. Since under the circumstances this Court has decided state procedure (including but not necessarily limited to the appeal) is appropriate, this Court necessarily abstains from that function.

For all of these reasons, we decline to exercise jurisdiction and will not enjoin the continued prosecution of Cause Numbers 276,449 and 276,982 in the State District Courts of Travis County, Texas. Counsel for the Defendants is to prepare and present a proposed form of judgment in conformity with this opinion within five days.